Patrick Colsher
(NJ Bar # 012732010)
Reichman Jorgensen Lehman & Feldberg LLP
650 Fifth Avenue, Suite 2320
New York, NY 10019
Tel: (212) 381-1965
pcolsher@reichmanjorgensen.com

*Counsel for Plaintiffs*
(Additional Counsel on Signature Page)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Valtrus Innovations Ltd., and Key Patent Innovations Ltd.,<br><br>              Plaintiffs,<br><br>      v.<br><br>Iron Mountain Data Centers LLC,<br><br>              Defendant. | Civil Action No.<br><br>Hon.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND

Plaintiffs Valtrus Innovations Limited ("Valtrus") and Key Patent Innovations Limited ("KPI") (collectively, "Plaintiffs"), by and through undersigned counsel, bring this complaint for patent infringement and damages against Defendant Iron Mountain Data Centers LLC ("Iron Mountain") and, in support, allege the following:

## PARTIES

1.      Valtrus is the successor-in-interest to a substantial patent portfolio created by Hewlett Packard Enterprise and its predecessor, subsidiary, and affiliate companies, including Hewlett-Packard Development Company, L.P. (collectively, "HPE"). Valtrus is an Irish entity duly

organized and existing under the laws of Ireland. The address of the registered office of Valtrus is: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

2. KPI is the beneficiary of a trust pursuant to which Valtrus owns, holds, and asserts the Asserted Patents. KPI is an Irish entity duly organized and existing under the laws of Ireland. The address of the registered office of KPI is: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

3. On information and belief, Defendant Iron Mountain is a limited liability company organized and existing under the laws of the State of Delaware. On information and belief, Iron Mountain can be served with process at Corporation Service Company, 251 Little Falls Dr., Wilmington, DE 19808.

**ASSERTED PATENTS**

4. Valtrus is the assignee of and owns all right and title to each of the Asserted Patents, which are U.S. Patent Nos. 6,854,287 (the '287 Patent); 6,868,682 (the '682 Patent); and 6,718,277 (the '277 Patent).

5. The Asserted Patents were developed by inventors working for HPE. HPE developed numerous innovative and diverse technologies, including groundbreaking inventions pertaining to data center cooling and analytics for monitoring conditions in data centers.

6. The '287 Patent, entitled "Cooling System," was duly and lawfully issued on February 15, 2005. A true and correct copy of the '287 Patent is attached hereto as Exhibit 1.

7. The '287 Patent was in full force and effect from its issuance to its expiration. Valtrus owns by assignment the entire right and title in and to the '287 Patent, including the right to seek damages, including past damages, for any infringement thereof.

2

8.      The '682 Patent, entitled "Agent Based Control Method and System for Energy Management," was duly and lawfully issued on March 22, 2005. A true and correct copy of the '682 Patent is attached hereto as Exhibit 2.

9.      The '682 Patent was in full force and effect from its issuance to its expiration. Valtrus owns by assignment the entire right and title in and to the '682 Patent, including the right to seek damages, including past damages, for any infringement thereof.

10.     The '277 Patent, entitled "Atmospheric Control Within a Building," was duly and lawfully issued on April 6, 2004. A true and correct copy of the '277 Patent is attached as Exhibit 3.

11.     The '277 Patent was in full force and effect from its issuance to its expiration. Valtrus owns by assignment the entire right and title in and to the '277 Patent, including the right to seek damages, including past damages, for any infringement thereof.

## JURISDICTION AND VENUE

12.      This is an action for patent infringement arising under the United States Patent Laws, 35 U.S.C. § 100 et seq.

13.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

14.     Iron Mountain operates a data center in this District. Iron Mountain's NJE-1 data center facility is located at 3003 Woodbridge Ave Edison, NJ 08837.[1]

15.     This Court has general and specific personal jurisdiction over Iron Mountain. Iron Mountain operates a data center in this District at its NJE-1 facility. Iron Mountain has maintained offices, employees, and business operations in New Jersey, and has therefore purposefully availed itself of the privileges of conducting business in New Jersey and has minimum contacts with the State of New Jersey. The exercise of personal jurisdiction is proper under the New Jersey Long

---

[1] https://www.ironmountain.com/data-centers/locations/new-jersey-data-center.

Arm Statute, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over Iron Mountain because, on information and belief, it has performed methods in its New Jersey data center facility that infringed the Asserted Patents, such that Plaintiffs' causes of action arise directly out of Iron Mountain's contacts with New Jersey.

16.    Venue is proper in this District under 28 U.S.C. § 1400(b). Iron Mountain has a regular and established place of business in this District at its NJE-1 data center facility. On information and belief, Iron Mountain has committed acts of infringement in this District at this facility.

<u>**DEFENDANT'S DATA CENTERS AND INFRINGING CONDUCT**</u>

17.    Iron Mountain owns and operates a number of data centers across the United States. For example, Iron Mountain advertises operating 30+ data centers with 5+ million square feet of data center space globally, with twelve unique colocation markets in the United States.[2] Iron Mountain's data centers implement cooling equipment from various suppliers, and Iron Mountain used that equipment to perform methods of cooling that, on information and belief, infringed the Asserted Patents.

18.    In particular, Iron Mountain has used cooling equipment from Vertiv Corporation in its data centers. For example, in a related declaratory judgment action filed by Vertiv relating to the '287 Patent, Vertiv has admitted that Iron Mountain used Vertiv's products for which Vertiv seeks a declaratory judgment of noninfringement. *See Vertiv Corporation v. Valtrus Innovations Ltd.*, No. 2:24-cv-00907, Dkt. 227 at 3 (E.D. Tex.).

19.    Iron Mountain's public website and virtual tours also show use of Vertiv cooling equipment in its data centers:

---

[2] https://www.ironmountain.com/data-centers/colocation/our-data-centers.



**Iron Mountain Data Center** is located in Kansas City, Missouri. Design Mechanical, Inc. was contracted to provide HVAC equipment (chillers, air handling units and Liebert computer room equipment) in this new underground Data Center.

https://dmi-kc.com/data-centers/



https://youtu.be/iI4euS078L0?si=3muDpBSSDigkEHRU&t=147

20.    Iron Mountain has also used Stulz cooling equipment in its data centers. For example, Iron Mountain's virtual tours show Stulz cooling units located inside its data centers:



https://youtu.be/a0avhuN3d4I?si=l9gYpUEFBID4y5g9&t=122

21.     Iron Mountain has also used Trane cooling equipment in its data centers. For example, Iron Mountain's virtual tours show Trane cooling units located at its data center facilities:



https://youtu.be/HZZm7RXPPu4?si=PDdEjvqo8m7o_TfA&t=177

22.     Iron Mountain has also used Carrier cooling equipment and software in its data centers. For example, Carrier published a case study describing Iron Mountain's use of its cooling equipment at its data centers:

> In order to meet the precise cooling needs of the growing data center in an efficient manner, and to obtain a top industry rating for their facility, Iron Mountain needed a reliable chiller that could operate efficiently under part- or full-load conditions. They installed two Carrier Evergreen® 23XRV chillers with Foxfire™ compression technology, a water-cooled screw chiller with a variable speed drive that enables the unit to deliver impressive efficiency regardless of load. The 23XRV chillers effectively "grow" with the data center's server population, undertaking a greater cooling load as more and more heat-producing servers are added.

https://www.scribd.com/document/219105053/USE-OF-AIR-CHILLERS

23.     Automated Logic, which is owned by Carrier, also published a success story about its partnership with Iron Mountain and Iron Mountain's use of its building management system software:

Iron Mountain Data Centers is a data center services company and a proud part of Iron Mountain, a company that found its origins dedicated to storing, protecting and managing critical business data, documents and assets. Its worldwide data centers help IT executives accelerate digital transformation with IT infrastructure solutions that combine core, cloud, and edge data center services for retail, enterprise, and hyperscale customers with colocation needs.

The Automated Logic Strategic Accounts team provides support for global projects and has been the standard building management system (BMS) contractor for the Iron Mountain portfolio since inception. They helped Iron Mountain Data Centers standardize their processes across all their data centers, and developed their basis of design. As a result, Iron Mountain Data Centers now has a trusted partner that can provide a single, scalable, repeatable BMS solution for all of their data centers around the globe - allowing them to get their data centers up and running faster.

https://www.automatedlogic.com/en/success-stories/iron-mountain/

24.    On information and belief, Iron Mountain may have used other cooling equipment from suppliers beyond those listed above in its data centers to perform methods that infringe the Asserted Patents. For example, Iron Mountain may have used cooling equipment or software from companies including Schneider Electric, DataAire, or Nlyte to infringe the Asserted Patents. On information and belief, Iron Mountain may also use equipment from additional suppliers that Valtrus is not aware of from public information but that can be identified through discovery.

25.    Valtrus notified Iron Mountain of its infringement of its patent portfolio relating to data center technologies and sought to resolve this dispute prior to bringing this case.

26.    On March 22, 2024, Valtrus sent a letter to Deborah Marson, Iron Mountain's Executive Vice President, General Counsel and Secretary, informing Iron Mountain about its patent portfolio and offering an opportunity to license the patents. The letter attached a representative list of data center-related patents and included claim charts demonstrating

7

infringement of five patents, including the '287 Patent and '277 Patent. The letter also noted that Valtrus had incomplete information regarding the products and methods used by Iron Mountain in its data centers because those data centers are secure facilities that are not open to the public, and offered to enter into a non-disclosure agreement with Iron Mountain to confirm the scope and extent of Iron Mountain's infringement.

27.     On April 19, 2024, after receiving no response to its initial letter, Valtrus sent Iron Mountain another letter, addressed to both Deborah Marson and Raymond Fox, Iron Mountain's Executive Vice President and Chief Risk Officer. The follow up letter again requested an opportunity to discuss licensing arrangements and included a claim chart demonstrating infringement of another data center patent.

28.     Throughout 2024, the parties discussed potential licensing arrangements, but did not reach a license deal.

29.     In the declaratory judgment litigation pending between Valtrus and Vertiv, *see Vertiv Corporation v. Valtrus Innovations Ltd.*, No. 2:24-cv-00907 (E.D. Tex.), where Vertiv has stated repeatedly that it will be liable for any judgment against its customers for infringing Valtrus's patents using its equipment, Valtrus sought to resolve its customer allegations directly with Vertiv. Valtrus made multiple attempts to resolve its disputes with Vertiv's customers throughout 2024 and 2025, and Vertiv consistently refused to engage. On February 5, 2026, Valtrus sent a final request to Vertiv to resolve its customers' infringement without litigation. Exhibit 4. Vertiv never responded.

30.     Because Iron Mountain has refused to Valtrus's efforts to resolve this dispute without litigation, and has not provided any additional information about its cooling equipment

used in its data centers, Plaintiffs have been forced to file this case to protect their valuable patent rights.

## FIRST CLAIM

### (Infringement of the '287 Patent)

31. Valtrus re-alleges and incorporates herein by reference paragraphs 1-30 of the Complaint.

32. The '287 Patent is generally directed to a system and method for cooling a room configured to house a plurality of computer systems.

33. Iron Mountain infringed the '287 Patent by performing methods of cooling its data centers prior to the expiration of the '287 Patent. As described above, Iron Mountain has used cooling equipment and control software from at least Vertiv, Stulz, and Trane to cool its data centers, and may have also used other cooling equipment and control software from other suppliers such as Schneider Electric or DataAire in a similar manner to perform the claimed methods. Exemplary claim charts reflecting how Iron Mountain used or may have used these products to infringe claim 1 of the '287 Patent are attached as Exhibits 5-8.

## SECOND CLAIM

### (Infringement of the '682 Patent)

34. Valtrus re-alleges and incorporates herein by reference paragraphs 1-30 of the Complaint.

35. The '682 Patent is generally directed to a system and method for controlling temperature in a data center based on sensory data.

36. Iron Mountain infringed the '682 Patent by performing methods of cooling its data centers prior to the expiration of the '682 Patent. As described above, Iron Mountain has used cooling equipment and control software from at least Vertiv, Stulz, and Trane to cool its data

centers, and may have also used other cooling equipment and control software from other suppliers such as Schneider Electric or DataAire in a similar manner to perform the claimed methods. Exemplary claim charts reflecting how Iron Mountain used or may have used these products to infringe claim 1 of the '682 Patent are attached as Exhibits 9-12.

## THIRD CLAIM

### (Infringement of the '277 Patent)

37. Valtrus re-alleges and incorporates herein by reference paragraphs 1-30 of the Complaint.

38. The '277 Patent is generally directed to a system and method for controlling atmospheric conditions within a data center building.

39. Iron Mountain infringed the '277 Patent by performing methods of cooling its data centers prior to the expiration of the '277 Patent. As described above, Iron Mountain has used cooling equipment or software from at least Stulz and Automated Logic to cool its data centers, and may have also used other cooling equipment or software from other companies such as Schneider Electric or Nlyte in a similar manner to perform the claimed methods. An exemplary claim chart reflecting how Iron Mountain used or may have used these products to infringe claim 1 of the '277 Patent is attached as Exhibit 13.

## PRAYER FOR RELIEF

WHEREFORE, Valtrus prays for judgment against Iron Mountain , as follows:

A. That Iron Mountain has infringed each of the Asserted Patents;

B. That Iron Mountain pay Plaintiffs damages adequate to compensate Plaintiffs for its past infringement of each of the Asserted Patents, together with interest and costs under 35 U.S.C. § 284;

10

C.   That Iron Mountain pay prejudgment and post-judgment interest on the damages assessed;

D.   That this is an exceptional case under 35 U.S.C. § 285; and that Iron Mountain pay Plaintiffs' attorneys' fees and costs in this action; and

E.   That Plaintiffs be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues triable to a jury.

Date: April 13, 2026

Matthew G. Berkowitz (*pro hac vice forthcoming)*
Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
mberkowitz@reichmanjorgensen.com

Connor S. Houghton (*pro hac vice forthcoming)*
Reichman Jorgensen Lehman & Feldberg LLP
1909 K Street NW, Suite 800
Washington DC, 20006
Tel: (202) 894-7310
choughton@reichmanjorgensen.com

Respectfully submitted,

<u>s/ Patrick Colsher</u>
Patrick Colsher
(NJ Bar # 012732010)
Sean M. McCarthy (*pro hac vice forthcoming)*
Reichman Jorgensen Lehman & Feldberg LLP
650 Fifth Avenue, Suite 2320
New York, NY 10019
Tel: (212) 381-1965
pcolsher@reichmanjorgensen.com
smccarthy@reichmanjorgensen.com

*Attorneys for Plaintiffs*

11

## <u>CERTIFICATION UNDER LOCAL RULES 11.2 AND 40.1</u>

Pursuant to Local Civil Rules 11.2 and 40.1(c), Plaintiff certifies that it has filed actions asserting the same patents in this District, and that there are other actions currently pending in other courts involving some of the same patents. Three cases involving the same patents are being contemporaneously filed in this District on this same date:

- *Valtrus Innovations Ltd. and Key Patent Innovations Ltd. v. Cologix, Inc.*

- *Valtrus Innovations Ltd. and Key Patent Innovations Ltd. v. H5 Data Centers LLC*

- *Valtrus Innovations Ltd. and Key Patent Innovations Ltd. v. Iron Mountain Data Centers LLC*

The following cases are currently pending in other judicial districts and involve one or more of the same patents:

- *Valtrus Innovations Ltd. and Key Patent Innovations Ltd. v. CoreSite, LLC*, No. 26-cv-03926 (N.D. Ill.)

- *Valtrus Innovations Ltd. and Key Patent Innovations Ltd. v. Lumen Technologies, Inc.*, No. 26-cv-03928 (N.D. Ill.)

- *Valtrus Innovations Ltd. and Key Patent Innovations Ltd. v. Netrality Properties, LP*, No. 26-cv-03929 (N.D. Ill.)

- *Valtrus Innovations Ltd. and Key Patent Innovations Ltd. v. NTT Global Data Centers Americas, Inc.*, No. 26-cv-03945 (N.D. Ill.)

- *Valtrus Innovations Ltd. and Key Patent Innovations Ltd. v. Prime Data Centers LLC*, No. 26-cv-03958 (N.D. Ill.)

- *Valtrus Innovations Ltd. and Key Patent Innovations Ltd. v. EvoDC, LLC*, No. 26-cv-00286 (E.D. Tex.)

- *Valtrus Innovations Ltd. and Key Patent Innovations Ltd. v. STACK Infrastructure, Inc.*, No. 26-cv-00287 (E.D. Tex.)

- *Vertiv Corporation v. Valtrus Innovations Ltd.*, No. 2:24-cv-00907 (E.D. Tex.)

- *Vertiv Corporation v. Valtrus Innovations Ltd. and Key Patent Innovations Ltd.*, No. 2:26-cv-00084 (E.D. Tex.)

s/ Patrick Colsher
Patrick Colsher
(NJ Bar # 012732010)
Reichman Jorgensen Lehman & Feldberg
LLP
650 Fifth Avenue, Suite 2320
New York, NY 10019
Tel: (212) 381-1965
pcolsher@reichmanjorgensen.com

13

## CERTIFICATION UNDER LOCAL RULE 201.1

Pursuant to Local Civil Rule 201.1, Plaintiffs hereby certify that this civil action is not subject to compulsory arbitration, as Plaintiffs seek monetary damages in excess of $150,000, exclusive of interest and costs and any claim for punitive damages.

*s/ Patrick Colsher*
Patrick Colsher
(NJ Bar # 012732010)
Reichman Jorgensen Lehman & Feldberg LLP
650 Fifth Avenue, Suite 2320
New York, NY 10019
Tel: (212) 381-1965
pcolsher@reichmanjorgensen.com